**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| MELISSA J. JOHNSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:12-CV-617 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa J. Johnston ("Johnston") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Johnston alleges that the ALJ improperly weighed medical opinion, erred in his duty to adequately develop the record, and failed to consider the combined effect of all of her impairments.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's decision with regard to his treatment of the medical opinions, and that the ALJ committed no error in developing the record or evaluating the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

combined effect of Johnston's impairments. Accordingly, I **RECOMMEND DENYING** Johnston's Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 13.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Johnston failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Johnston bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Johnston was born on November 1, 1973 (Administrative Record, hereinafter "R." at 53), and was a "younger person" on her alleged onset date. R. 53; 20 C.F.R. § 404.1563(c). Johnston's last insured date is December 31, 2013. R. 91. She must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Johnston is a high school graduate (R. 249) and had previously worked full-time as a waitress at a truck stop and a sewing machine operator. R. 245. Johnston reported that during the relevant period she

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of her or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

continued to work as a waitress two days a week, and had the capacity to do housecleaning, care for pets, prepare meals, go grocery shopping, and handle her own finances. R. 265–69. She further reported that she enjoyed company, regularly visited with family, and had no difficulty getting along with others or authority figures. R. 269–71.

### Claim History

Johnston protectively filed for SSI and DIB on January 29, 2009, claiming that her disability began on January 1, 2009. R. 54, 297. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 53–102. On January 20, 2011, Administrative Law Judge ("ALJ") Robert S. Habermann held a hearing to consider Johnston's disability claim. R. 30. Johnston was represented by an attorney at the hearing, which included testimony from Johnston and vocational expert Leah P. Salyers. R. 28–52.

On June 21, 2011, the ALJ entered his decision denying Johnston's claims. R. 11–22. The ALJ found that Johnston suffered from severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spine; insulin dependent diabetes mellitus; diabetic neuropathy; depression; and anxiety. R. 14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Johnston retained the RFC to perform light work, with the following additional limitations:

> Lift and or carry 10 pounds frequently and 20 pounds occasionally; occasional operation of foot controls; sit for 6 hours of an 8 hour workday; stand and/or walk for 6 hours of an 8 hour workday with occasional stooping, crouching, kneeling and climbing of ramps and stairs and no concentrated exposure to hazardous machinery or unprotected heights; no climbing of ladders, ropes or scaffolds, etc. The claimant [sic] mild to moderate reduction in social functioning and moderate reduction in concentration, persistence and pace further limit the claimant to performance of work in a routine work setting that does not require the performance of complex instructions.

R. 19. The ALJ determined that Johnston could return to her past relevant work as a waitress and cashier. R. 21. Thus, the ALJ concluded that she was not disabled. R. 21. On October 23, 2012, the Appeals Council denied Johnston's request for review (R. 1–6), and this appeal followed.

## **Treating Physician**

Johnston alleges that the ALJ erred by according no weight to a series of opinions rendered by Johnston's treating physician and nurse, and finding that their opinions were not supported by objective medical evidence, Johnston's treatment history, or other medical opinions contained in the record. R. 21. Nurse Susan U. Moore and Michael H. Stoker, M.D. saw Johnston as her primary care providers on numerous occasions beginning in January 2008. On September 2, 2009, they concluded in an opinion letter to Johnston's disability attorney that Johnston was "unable to engage in substantial gainful activity" due to her need for two or three or more unscheduled absences from work per month. R. 701. The letter is signed by both Nurse Moore and Dr. Stoker as supervising physician. Later in September 2009, Nurse Moore signed a clinical assessment of pain which indicated that Johnston's pain would affect her ability to work, that physical activity would increase her pain, and that medication would severely limit her effectiveness in the workplace. R. 580. In May 2010, Dr. Stoker signed a physical capacities evaluation that reflected significant limitations in Johnston's ability to work an 8-hour workday. R. 595.

The social security regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §

5

416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citations omitted).

In this case, the ALJ's decision to give Dr. Stoker and Nurse Moore's opinions no weight is supported by substantial evidence. The relevant medical evidence reveals that Johnston has a history of back problems and diabetic neuropathy dating back more than a decade, with accompanying pain and numbness in her extremities. The record also reflects that Johnston reported depression and anxiety stemming from her physical impairments. At the time of her alleged onset date of January 1, 2009, Johnston was under the care of an endocrinologist, Carl Bivens, M.D., for her diabetes. The treatment notes from Dr. Bivens in early 2009 show that Johnston's diabetes was under no worse than fair control, and at times was under good control while on an insulin pump. R. 465–66, 473. Johnston reported only minor numbness or neuropathy and no pedal symptoms from her diabetes in February 2009. R. 265.

Johnston also saw Nurse Moore and Dr. Stoker at Fort Chiswell Medical Center at various points in 2008 and 2009. Soon after her alleged onset date in January 2009, Johnston complained of arm numbness and chest pain from her neuropathy, as well as symptoms of depression and anxiety. R. 425. Johnston also reported that she "leaves work early daily" because of her conditions R. 425. Nurse Moore excused Johnston from work for two days to

allow her to adjust to new anti-depressants and referred her to other resources. The next month, Johnston reported improvement with her anxiety and blood sugars, but was having pain in her neck and shoulders and stated that she reduced her work to two days a week. R. 423.

A letter to Johnston's attorney on September 2, 2009, signed by both Nurse Moore and Dr. Stoker, stated that Johnston would have "unscheduled absences of two (2) or three (3) days a month, or more." R. 701. As a result, in their opinion, Johnston would be unable to engage in substantial gainful activity as defined under the regulations. On September 18, 2009, Nurse Moore filled out a clinical assessment of pain form. R. 580. The form noted that Johnston's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work." R. 580. The form further indicated that physical activity exacerbates Johnston's pain and that medication "severely limit[ed]" her effectiveness in the workplace. R. 580. Treatment notes from the same date show that Johnston was still working two days a week. R. 703.

Johnston's physical therapist completed a physical capacities evaluation in May 2010, which Dr. Stoker adopted by signature. R. 595. The form indicated that Johnston would be able to sit for only 1 hour at a time, stand for 30 minutes at a time, and walk for only 8 minutes at a time. R. 595. Furthermore, in an 8-hour work day, Johnston would only be able to sit for a total of 5 hours, stand for a total of 3 hours, and walk for a total of 1 hour. R. 595. According to the form, Johnston was limited to occasionally lifting and carrying up to 20 pounds and was unable to use her right hand and both feet for repetitive movements and action. R. 595. The physical therapist stated that her limitations are primarily attributable to weakness and instability in her right upper extremity and right knee, along with decreased activity tolerance. R. 595.

After losing her insurance. Johnston shifted her primary care to Bland County Medical Clinic ("BCMC"). At Johnston's initial visit in March 2009, Mary Jo Collie, FNP assessed diabetes, hypertension, depression, hypercholerolemia, gastreoeophageal reflux disease, and

peripheral neuropathy. R. 526. Over the course of 2009, Johnston was also seen for headaches, bronchitis, a sinus infection, and an ear infection. R. 512–518, 523–24, 631–32, 637–40. Johnston's treatment largely consisted of medication and suggested lifestyle changes, such as quitting smoking and regular exercise. Johnston went to the hospital on December 8, 2009 with complaints of chest pain, but was discharged with no work limitations the next day and denied lingering chest pain the next month. R. 633, 671–77.

By January 2010, Johnston was using an insulin pump for her diabetes, Cymbalta for her depression, Lyrica for her neuropathy, cholesterol medication, as well as heartburn and pain medication. R. 635. Johnston was also referred to counseling for depression and to another endocrinologist for her diabetes. R. 363–34, 369. Johnston made a series of visits to Mount Rogers Community Services Board for mental health counseling starting in January 2010. R. 941. Johnston reported in sessions that she continued to work while in pain and that she was limited to part-time hours as a result. R. 934. She expressed frustration over her finances, which had caused her to switch from an insulin pump to injections to control her diabetes. R. 939. Notes from counseling sessions indicate at least some progress in mental health treatment throughout January, February, and March 2010. R. 932–40.

Johnston was treated by the UVA Endocrinology Clinic through June 2011, where providers helped manage her diabetes through insulin adjustments. R. 714–47, 786–92, 900–20. Her blood sugars generally improved during this time frame, although Johnston continued to report pain from neuropathy. R. 726, 905. In January 2011, Johnston went to the hospital during a high blood sugar episode, which she attributed to stress surrounding a court date. R. 816. Diabetic ketoacidosis was ruled out and she was told to adjust her insulin as a result. R. 821.

In August 2010, Johnston went to the BCMC with complaints of increased lower back pain and numbness on her left side and extremities. R. 607. Johnston was prescribed a muscle

relaxant and was told to take Motrin, but was otherwise continued on the same course of treatment. R. 608, 610–11. Johnston continued to report depression into 2011, although her mood and affect was noted by different medical providers to be "pleasant" or "normal" during this time. R. 774–75, 816, 828, 843, 855, 871, 876. At another doctor's visit for complaints of back and hip pain in February 2011, Johnston denied any loss of sensation or function in her legs and was observed to walk "without subjective or objective evidence [of] discomfort." R. 873. An exam showed mild muscle spasms in her back and "equivocal" discomfort in her hip at that time. R. 873. Largely benign findings were also made at a follow-up appointment the next month. R. 871.

H.C. Alexander, III, M.D., a specialist in rheumatology and internal medicine, rendered a consultative opinion as to Johnston's alleged physical impairments in March 2011. R. 794–801. Dr. Alexander found that other than Johnston's degenerative disc disease and diabetes mellitus, Johnston's impairments were "of less than minimal severity or carr[ied] no impairment." R. 794. Dr. Alexander found that no medical evidence supported Johnston's allegation of numbness, tingling, and pain in her feet. R. 795. In a medical source statement, Dr. Alexander reported that Johnston could lift and carry up to 10 pounds frequently, 11 to 20 pounds occasionally, and would be unable to lift 21 pounds or more. R. 796. Further, he noted that Johnston could sit for 2 hours without interruption, stand for 1 hour without interruption, walk for 30 minutes without interruption, and did not require the use of a cane. R. 797. Johnston, according to Dr. Alexander, had no significant limitations with the use of her arms or hands. R. 798. However, Dr. Alexander found that Johnston could not climb ladders or scaffolds, but could occasionally perform other postural activities. R. 799. Dr. Alexander found no significant environmental limitations, with the exception of avoiding unprotected heights and moving mechanical parts. R. 800.

9

Angelia Berry, Psy.D. conducted a consultative psychological evaluation of Johnston in March 2011. R. 804–807. At the examination, Johnston was properly oriented, had normal speech, logical and coherent thought content, and grossly intact short- and long-term memory. R. 806. Dr. Berry noted diagnostic impressions of "major depressive disorder, recurrent, moderate," anxiety disorder, and a global assessment of functioning ("GAF") of 63. R. 807. Dr. Berry stated that Johnston was capable of managing her finances, and called her prognosis "fair" with potential future benefit from outpatient counseling. R. 807. In an associated medical source statement, Dr. Berry indicated that Johnston's ability to understand, remember, and carry out instructions would not be affected by her impairments. R. 808. Furthermore, Dr. Berry noted that Johnston's impairments would only have a mild impact on her ability to interact appropriately with supervision, co-workers, and the public. R. 809.

Johnston was admitted to the hospital with chest pain in early May 2011; tests ruled out a series of possible diagnoses, and again pointed to smoking as a potential culprit. R. 858. On June 27, 2011, Johnston was again admitted to the hospital and was held on a temporary detention order after having suicidal ideations stemming from a denial in disability benefits. R. 846, 861. Sarah Williams, M.D. diagnosed Johnston with depressive disorder and adjustment disorder. R. 860. Johnston was discharged stable and improved, with no new prescriptions and instructions to continue counseling at Mount Rogers Community Services Board. R. 862. Johnston's initial evaluation at Mount Rogers July 5, 2011 was unremarkable and she was recommended for short-term counseling. R. 921–28. At check-ups at BCMC also in July 2011, Nurse Collie observed Johnston to be in a pleasant mood, with flat affect, and "somewhat depressed." R. 866–67. Johnston saw Sage Lockhart, M.D. at Wythe Counseling Center in August 2011, who diagnosed depressive and panic disorders, and recommended continuing her current medication regimen with Prozac, Remeron, and a trial of Klonopin. R. 949. By September 2011, Johnston stated she

received a significant benefit from her medication and reported an improved mood. R. 890. Treatment notes from a counseling session in October 2011 show some treatment progress. R. 930.

As an initial matter, I find the opinions co-signed by Dr. Stoker with non-physicians—including the September 2009 disability letter and May 2010 physical capacities evaluation—to be acceptable treating medical source opinions entitled to the requisite deference under the regulations. R. 595, 701; See Moreland v. Astrue, 2013 WL 271177, at *2 (D.S.C. Jan. 24, 2013) (finding opinion co-signed by treating physician and nurse practitioner properly evaluated by ALJ as opinion of treating physician).

Furthermore, although Nurse Susan Moore's clinical assessment of pain from September 2009 is not from an acceptable medical source, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as nurse practitioners. Ingle v. Astrue, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7 2011) (citing Social Security Ruling ("SSR") 06–03p;[3] 20 CFR §§ 404.1513(d), 416.913(d)). Evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; nevertheless, "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)).

However, I find that the ALJ's decision to give these opinions no weight is supported by substantial evidence. The records from Fort Chiswell Medical Center fail to substantiate the

---

[3] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

11

opinions of Dr. Stoker and Nurse Moore suggesting disabling limitations. It should be first noted that the majority of Johnston's visits to Fort Chiswell came before the alleged onset date of January 1, 2009. While these prior records help provide context to Johnston's course of treatment under Nurse Moore and Dr. Stoker, the opinions at issue fail to address much of the relevant time period at issue 2010 to present.

The Fort Chiswell treatment notes that do pertain to the alleged period of disability contain little more than a recitation of Johnston's subjective complaints and a conservative treatment history. That the Fort Chiswell providers have documented Johnston's subjective complaints in their assessments or notes does not transform those complaints into clinical evidence. See Webb v. Astrue, 2012 WL 3061565, at *17 (N.D.W. Va. June 21, 2012) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). Johnston's conditions were managed through medication and recommended lifestyle changes. Simply put, the Fort Chiswell records lack objective evidence of work-preclusive mental or functional limitations that would support an opinion suggesting disability.

Nurse Moore and Dr. Stoker, a general practitioner, deferred treatment of Johnston's diabetes to specialists at UVA and Endocrinology Associates, a factor also weighing against their opinions. Also, when Nurse Moore and Dr. Stoker briefly ordered Johnston off work during the relevant period, it was to allow for adjustment in medication. R. 425. This is a far cry from regularly requiring multiple absences from work a month, as concluded in the September 2009 letter. As to the May 2010 physical capacities evaluation, Dr. Stoker referred Johnston to the physical therapist solely for the purpose of conducting a functional assessment. R. 599. The therapist saw Johnston once and, as the ALJ noted, did not conduct any objective testing for her limitations. R. 595–98. Dr. Stoker's signature appears at the bottom of the check-the-box form with no other notations. R. 595. "Such check-the-box assessments without explanatory

comments are not entitled to great weight, even when completed by a treating physician."
Leonard v. Astrue, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.1993).

Furthermore, although Dr. Stoker is properly considered a treating physician and his opinion should be treated as such, it is unclear to what extent he saw Johnston *vis-à-vis* the nurse practitioners or the physical therapist, who appear to have nearly exclusively handled Johnston's care. This fact does not greatly diminish the weight that should be given to Dr. Stoker's opinions, as the realities of today's healthcare system often demand such an arrangement. However, it is one of the myriad of considerations in which Dr. Stoker's opinions should be viewed.

The opinions of Dr. Stoker and Nurse Moore also contrast with other, well supported opinions in the record, including that of consultative examiner Dr. Alexander, who noted physical work limitations but whose opinion fell short of total disability. R. 794–801. The treatment notes, including those of Dr. Bivens, BCMC, and UVA all suggest limitations; however, these limitations are not disabling under the regulations. Finally, the ALJ's final RFC took into account Johnston's limitations related to lifting carrying, sitting, standing, and other physical activities. R. 19. Thus, the ALJ credited the opinions of Dr. Stoker and Nurse Moore to the extent that the record, viewed as a whole, supported them. I find that substantial evidence in the record, laid forth above, supports the ALJ's decision to give the opinions of Dr. Stoker and Nurse Moore no weight.

### **Duty to Develop the Record as to Mental Impairments**

Johnston claims that the ALJ committed error in failing to fully develop the record as to Johnston's emotional problems, which she alleges would "detract from her ability to perform work on a sustained basis." Pl.'s Br. Summ. J. 8. I find that the ALJ's decision was based on an adequately developed record.

13

An ALJ has an independent responsibility to develop the evidence in the record. Cook v. Heckler, 783 F.2d 1168, 1173–74 (4th Cir. 1986). "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Id. (citations omitted). The failure of the ALJ "to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944" may amount to neglect of this duty. Id.

This duty, however, does not transform the ALJ into claimant's counsel and the ALJ "has the right to assume that counsel is presenting the claimant's strongest case for benefits." Blankenship v. Astrue, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27, 2012) (citations omitted). Moreover, "[t]he regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey v. Astrue, 614 F. Supp. 2d 679, 693–94 (W.D. Va. 2009) (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship, 2012 WL 259952, at *13 (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

No such evidentiary gap exists in the record here, and the record was more than sufficient for the ALJ to make a determination regarding Johnston's mental impairments. Johnston submitted a significant amount of medical evidence concerning Johnston's depression and anxiety. The ALJ considered all of the evidence presented by Johnston, including records from counselors at Mount Rogers Community Services and Wythe Counseling Center, the consultative evaluation of Dr. Berry, the notes and opinions from Dr. Williams when Johnston

was hospitalized, treatment notes from Johnston's primary care providers, as well as the testimony of Johnston at the hearing. Furthermore, Johnston "has not identified material evidence that was missing at the hearing and has not presented new material evidence that should be considered." Clark v. Astrue, 2011 WL 3611326, at *3 (W.D. Va. Aug. 17, 2011). Therefore, I find that the ALJ was not derelict in his duty to develop the record as to Johnston's mental impairments.

## **Combination of Impairments**

Johnston contends that she is disabled due to a combination of impairments, and that the ALJ failed to "evaluate the cumulative or synergistic effect" of Johnston's various impairments. Pl.'s Br. Summ. J. 9. I find that the ALJ properly considered the combined effects of Johnston's different impairments, both physical and mental.

The regulations and Fourth Circuit cases make clear that where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue 'throughout the disability process.'" Mazyck v. Astrue, 2012 WL 315648, at *2 (D.S.C. Feb. 1, 2012) (citing 20 C.F.R. § 404.1523).

15

"[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011). Here, the ALJ explicitly found in his opinion that Johnston did not have an impairment or combination of impairments that met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 14. Furthermore, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Johnston's alleged physical and mental impairments when developing an RFC and finding Johnston not disabled. The ALJ's review of the medical evidence was not fragmented, as denounced by Walker, but a balanced approach that addressed the symptoms of Johnston's diabetes, back pain, depression, and anxiety in an integrated manner. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Johnston's impairments as supported in the record, providing restrictions that are both mental (e.g. "routine work" with no "complex instructions") and physical (e.g. "no climbing of ladders, ropes or scaffolds"). R. 19. For these reasons, I find that the ALJ did not fail to analyze the combined effect of Johnston's medical problems.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: January 27, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge